YOUNG, The WILLIAM. See Case No. 17,-760.

# Case No. 18,187.
## YOUNT v. UNITED STATES.
[Hoff. Dec. 36.]

District Court, N. D. California. Aug. 14, 1861.

MEXICAN LAND GRANTS — LOCATION — ACT OF JUDICIAL POSSESSION — OBJECTIONS TO SURVEY — EXCESSIVE QUANTITY.

[1. Where juridical possession was given by the proper officer of the Mexican government, the boundaries of the grant established, and the grantee formally put in possession of a specific tract, the boundaries of which were long recognized by his neighbors and by the Mexican government in making other grants, the court will not declare that such boundaries were erroneous and void on the ground that the land measured off and delivered was not within the exterior boundaries of the tract out of which it was to be taken, except upon the clearest proof that such was the fact. If, from the rude character of the diseño, it is impossible to ascertain with certainty that the land so delivered was outside of the boundaries delineated on the map, the boundaries will not be altered.]

[2. Where a judicial measurement and delivery of a tract of land according to fixed boundaries has been made by the Mexican authorities, and long acquiesced in, such boundaries will not be modified, although they include a considerable quantity in excess of the amount specified in the grant.]

[Claim by George C. Yount for the rancho of Caymus, 2 square leagues, in Napa county, granted February 23, 1836, by Nicholas Gutierrez to George C. Yount. Claim filed May 26, 1852, confirmed by the commission February 8, 1853, by the district court July 17, 1855 (Case No. 16,784), and appeal dismissed February 23, 1857. Heard on objections to survey.]

HOFFMAN, District Judge. The claim in this case having been finally confirmed, and a

survey made, objections have been filed on the part of persons intervening for their interests under the act of 1860.

The objections urged are: (1) That the official survey should be made in the form of a parallelogram, delineated in dotted lines on the diseño, and marked "Terreno Solicitado." (2) That the official survey embraces lands not only without the limits of the parallelogram referred to, but not included within the exterior boundaries of the diseño. (3) That the lines of the judicial survey, made under the authority of the former government, have not been followed, and that the same embrace more land than the quantity granted.

The first objection is, in effect, an attempt to procure a review and reversal of the decree of the court, which has become final by the dismissal of the appeal, and on which the survey has been made. On the argument of the cause it was strenuously contended that the delineation of the parallelogram on the diseño absolutely determined the location of the tract granted, and showed that it was to extend across the valley diagonally a distance of two leagues, and up and down the valley a distance of one league.

It was alleged by the claimant that the parallelogram in question was no part of the original diseño, but had been inscribed upon it after the grant was made. Another diseño, almost exactly resembling that found in the expediente, was produced, upon which no parallelogram was delineated. The record of judicial possession was also offered in evidence, from which it appeared that the tract measured out to the claimant in no respect corresponded to that delineated by the dotted lines of the parallelogram.

On the point thus presented full argument was had, and the court, by its decree, determined that the claim was valid to the land described in the record of judicial possession, and included within the boundaries of the tract delineated on Exhibit A,—i. e. the diseño which represented the whole tract, but which had no parallelogram inscribed upon it. The question, therefore, as to which should govern in the location of the tract,— the delineation of a certain parallelogram on the diseño, or the record of a judicial possession, which fixed the boundaries, and constituted a formal tradition of a specific tract by Mexican authority,—was deliberately and definitively determined, and it is now too late to reopen it for further discussion.

2. The second objection is that the juridical possession given was not within the exterior limits of the diseño adopted by the court and marked "Exhibit A." By the Mexican, and almost all continental, laws, a judicial delivery of possession was always necessary to effect a complete transfer of the right of property. By it the jus in re was added to the jus ad rem confirmed to the grant. When by the terms of the concession the land was imperfectly identified, or a specified quantity was granted, to be taken within large exterior limits, the delivery of possession operated in addition as a designation of the tract granted, and a severance of it from the public domain. It may therefore be viewed as consisting of two parts—First, the ascertainment of the particular tract to be delivered; and, secondly, the formal delivery to the grantee of the tract so ascertained. Of this tract, when thus delivered to him by the magistrate, in the presence of witnesses, the grantee took formal possession with appropriate solemnities and symbolical acts, by which he proclaimed his ownership. When, therefore, a proceeding of this kind has been had by competent authority under the former government; when the limits of the tract have been marked out, and the grantee has entered into the possession of it, and has remained in its undisputed enjoyment until the conquest of the country; when the boundaries so established have been respected by all his neighbors, and recognized by the government, when granting and giving possession of adjacent tracts,—it should at least require the clearest proof of manifest error on the part of the officer giving possession to justify the court in declaring a proceeding so formal, so long acquiesced in and acted upon, to be void on the ground that the land measured off and delivered was not within the exterior boundaries of the tract out of which it was to be taken.

The only grounds for asserting that so great an error was in this case committed are—First, that the delineation on the diseño of the course of the Napa river, and particularly of a considerable bend in it, shows that the tract exhibited on the diseño lay lower down the stream than the lands which were measured; secondly, that their situation is also proved by the position of a spring, or ojo de agua marked on the diseño. But the diseño is drawn in a manner far too rude and obviously inaccurate to justify us in attributing so much significance to the particular course which the stream is represented as taking. It represents nothing but two ranges of hills running parallel to each other, between which a stream marked Rio de Napa, pursues a sinuous course. On one of these hills a spring, or "ojo de agua," is represented. Had there been no judicial possession, no fixing of boundaries, no ancient and notorious possession of a tract of recognized limits, the indications of the diseño would necessarily have been accepted as fixing the location on that part of the stream which seems to correspond most nearly in course with the representation on the diseño. But when a juridicial possession has been given, the boundaries established, and the grantee formally put in possession of a specific tract, I cannot consider the vague and unsatisfactory indications of the diseño as sufficient to justify me in disregarding the acts of the Mexican authorities, unsettling long established boundaries, and disturbing a possession of nearly twenty

years. With respect to the "ojo de agua," the evidence is conflicting and unsatisfactory.

From the whole testimony, it may fairly be inferred that the spring intended to be represented on the diseño was very probably the upper spring, a short distance south of the northern boundary established by the judicial officer. It would seem that that spring from its rise and notoriety is as likely to be the one intended by the draughtsman on the diseño as the lower one, which it is urged fixes the position of the tract. If the upper spring be the one intended, the judicial measurements were within the limits of the tract; and, in any event, the question is so doubtful that no argument against the validity of the measurement can be drawn from the position on the diseño of the points marked "Ojo de Agua." On the whole, I think it clear that the tract measured off and delivered to the claimant under the authority of the former government should now be surveyed to him.

3. It is further objected that the official survey does not correspond with the judicial measurement. It is not necessary to recapitulate the testimony which in my judgment clearly establishes that the United States surveyor has conformed as nearly as may be to the lines established by the Mexican magistrate. Those lines are described in the record of possession, and the evidence of Leese, Bartlett, Fowler, Coombs, and others, show that the lines of the survey correspond with those of the judicial possession. One of these witnesses, Mr. Leese, officiated as measurer at the survey, while others were present at the measurement of the rancho of Dr. Bale, which immediately adjoins the rancho of the claimant, and whose southern boundary was the northern line of the rancho of the latter. It is also shown that the same line was pointed out by Dr. Bale to various witnesses as constituting the boundary between himself and the claimants, a fact of some significance when it is considered that the only objections to this survey are urged on the part of the representatives of Dr. Bale, the United States having withdrawn all opposition to it. It is contended that the northern or northwestern line should be drawn at right angles to the general course of the valley, or as nearly as possible parallel to the southern or southeastern line. That the course of that line was supposed by the Mexican magistrate to be parallel with the first line run by him is evident from the description of it in the juridical possession; but it is evident that his notion of the points of the compass was very inaccurate. All the witnesses, however, agree that the line was run across the valley from sierra to sierra in the direction of a lone pine tree, which was a conspicuous object from the starting point. An attempt was made to show that a tree lower down the valley than the line adopted by the surveyor general was the object in question. But I think it is shown beyond any reasonable doubt that the tree toward which the line was run was that which has been adopted by the surveyor as determining the course of the boundary. The boundary so fixed seems to be identical with that supposed by the attesting witnesses to have been established and acquiesced in at the time by Dr. Bale, who was present as a commandante, and subsequently, when possession of his own rancho was given.

But the most serious objection to the adoption of the judicial measurement is the quantity of land embraced within it. It appears by the official survey that the area of the tract within the lines established by the alcalde exceeds by about two-thirds of a league the quantity granted. There can be no doubt that possession was given of all the land between the two parallel ranges of hills, "from sierra to sierra." Such was clearly the intention of the magistrate, as appears by the record of judicial measurement as positively stated by Leese and other officiating witnesses, and as proved by the very nature of the case; for, independently of the testimony, it would hardly be conceivable that the magistrate would omit to establish for boundaries the great and unmistakable monuments which two abrupt and clearly defined ranges of mountains afforded, but would fix upon imaginary lines drawn near their bases. The width of the valley was correctly assumed by him to be about one league, and by the official survey we find that the length of the lower line, which crosses the valley from sierra to sierra, is 210 chains, while that of the upper line, also running from sierra to sierra, is 206 chains,—one Spanish league, or 5,000 varas,—being equal to 210 chains. As the tract was evidently intended to be one league wide by two broad, it is obvious that, at all events, it must extend from sierra to sierra. The excess in quantity principally arises from the circumstance that in making the measurement up the valley, and establishing the upper line, the alcalde has measured more than 10,000 varas, or two leagues in length.

The question is therefore presented, can the court disregard the formal delivery of possession by the Mexican authorities, and restrict the survey and location to the precise quantity granted? The nature and office of a judicial measurement of land and tradition of land have already been adverted to. It was a formality, not only contemplated, but required, by Mexican law, as a mode of establishing boundaries, and effecting a severance from the tract granted the adjoining public lands. Without it the grantee had, in strictness, no legal right of possession. When, therefore, this severance was effected and the boundaries established by competent authority, and with such exactness as, in the absence of instruments and

professional surveyors, was usual, it has appeared to me that we are bound to treat the tract of land so laid off by boundaries as finally and definitely assigned to the grantee.

There may undoubtedly be cases of gross error or fraud where the judicial measurement should be disregarded. But where the excess or deficiency is not greater than may reasonably be attributed to the imperfect modes of measurement which were universally adopted, it seems to me but just to regard the mention of quantity in the grant as intended to designate, not that precise quantity to be ascertained by an exact and scientific survey, such as no one in the department was capable of making, but to be ascertained in the customary and well-known mode adopted by the ordinary magistrates and assisting witnesses. By that mode of measurement, both grantor and grantee impliedly agreed to be bound, and it has sometimes occurred that the quantity measured was less than that called for in the grant. In such cases I have not hesitated to apply the same rule, and to hold that the tract granted was that measured off and designated by the Mexican authority as the quantity conceded by the government. To adopt any other rule would unsettle the boundaries of every rancho whereof judicial possession was given, for it probably never happened that the tract measured off by the alcalde did not exceed or fall short of the precise quantity mentioned in the grant.

It cannot be supposed that the Mexican government contemplated any subsequent and more accurate survey of lands once measured off by the judicial officer, for, when all the lands of an extensive valley were granted to different rancheros, each of whose lands were bounded by the limits established by the judicial measurement of his colindantes, there would exist no means of making up a deficiency in quantity of any one, without encroaching on the lands of his neighbor; while any excess that might be cut off from the lands of any one must either be assigned to his neighbor, thus giving to him a like excess in quantity, or be reserved to the nation; and a strip of public land thus introduced between two ranchos intended to be coterminous, which, as land was then used, would be absolutely without value to the public, and which would almost always be less than a league, and might often not exceed a few hundred varas in width.

It has, for these reasons, seemed to me that the judicial measurement and delivery of land under a Mexican grant, where its boundaries have been definitely established, and a possession taken and held of the tract so laid off, ought to be treated as having effected a severance of the tract so designated from the public, and as definitely fixing its location and limits. I therefore think that the survey in this case, having been shown to correspond with the judicial measurement, ought to be approved.